427 A.2d 1385

COMMONWEALTH of Pennsylvania,

v.

Norman W. RINI, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 14, 1979.

Filed April 3, 1981.

Leonard P. Klavonic, Aliquippa, for appellant.

Kemal A. Mericli, Assistant District Attorney, Pittsburgh, submitted a brief on behalf of Commonwealth, appellee.

Before CERCONE, President Judge, and MONTGOMERY and LIPEZ, JJ.

LIPEZ, Judge:

Appellant was convicted, in a jury trial, of indecent exposure. 18 Pa.C.S. § 3127. Appellant's sole contention is that the court below erred in ruling that a defense witness would not be permitted to testify because her testimony was irrelevant. Because the record is inadequate to resolve this question, we vacate the judgment of sentence and remand for further proceedings.

Two high school girls testified for the Commonwealth that at approximately 9:00 a. m. on September 26, 1977 they were crossing a bridge on their way to school, when they were distracted by a remark by an individual on the railroad tracks below. Looking down at the tracks, the girls saw a man with his pants pulled down to mid-thigh, exposing his genitals. When they arrived at school a few minutes later, they reported the incident to the principal, who called the police. About forty minutes later, the girls were called out of class to meet two policemen who said they had the man they were looking for. A policeman opened the door to the police wagon, in which appellant was sitting alone toward the front. The girls looked inside for a few seconds and identified appellant as the man they had seen exposing himself. The girls also made an in-court identification of appellant.

Another girl from the same high school testified that at about 9:20 a. m. she saw a man in a phone booth near the bridge where the other girls said they had seen appellant. The man in the booth was exposing his genitals and handling them, while pretending to talk on the phone. She reported the incident to a nearby policeman, who took her name. She waited, and a short time later, another police-

man came to her and said, "Come and identify the guy in the back of the van." She also looked inside the van and identified appellant.

The remainder of the Commonwealth's case consisted of the testimony of two police officers who arrested appellant. They were patrolling in the area near the bridge and the telephone booth at 9:29 a. m. when they received a radio call description of the incident and the man that had been seen by the first two girls. They saw appellant, who seemed to fit the description they had heard over the radio. As the patrolman approached, appellant fled. When they caught appellant, he told them he was on his way to work.

Appellant began his case with a number of character witnesses. He then presented the testimony of a woman who said she had lent appellant her car on the morning of the crime, so that appellant could drive her son to school. Appellant and her son had left the house at about 7:50 or 7:55 a. m. Appellant had also indicated that after driving the son to school, he was going to stop at an antique store, which was in the neighborhood where the school girls had seen the man exposing himself that morning.

Appellant then took the stand, testifying that after he had dropped the son off at school, he parked the woman's car in a parking lot in the neighborhood. He walked to an antique store, which was closed. He drove to another spot, parked and walked to another antique store, which was also closed. He decided to wait for the antique shop to open at a bar next door, but the bar was also closed. He decided to walk to another bar and while en route, he was stopped by two policemen. According to appellant, because he was scared, he told the policemen he was on his way to work, even though he was not. The policemen put him into the patrol wagon and then conducted the one-on-one identification procedures with the three high school girls. Appellant claimed he had never seen these girls before they identified him in the back of the wagon. Appellant also testified that he was with his lawyer and the lawyer's associate attorney on a later date, when he was seen by one of the three girls.

Appellant looked at her, and she looked directly at appellant as she passed by, but did not recognize him. The associate attorney then testified for appellant, corroborating his story about the Commonwealth witness's failure to recognize him.

Before resting his case, defendant counsel attempted to present another witness. After an offer of proof at side bar, the trial judge refused to allow the testimony on the ground that it was irrelevant. It is this refusal which is the basis for this appeal. Appellant's brief [1] asserts that the witness which the defense wanted to present was a girl who attended the same high school as the Commonwealth's eyewitnesses. She would testify that at about 9:00 a. m. on September 20, 1978, six days before the incident in this case, she and two girl friends were crossing the same bridge on their way to school, when they were distracted by a remark made by a person below the bridge. Looking down, they saw a man exposing himself. They reported this incident when they got to school.

When appellant was arrested for the incident in this case on September 26, police obtained a mug shot, which they showed as part of a photographic array to the girls who had witnessed the September 20 incident. They identified appellant's mug shot as the photo of the man they had seen September 20. Appellant was then charged with indecent exposure for the September 20 incident. At the preliminary hearing on that charge, two of the girls related that appellant closely resembled the man they had seen exposing himself on September 20, but when they saw him in person, they could tell that he was definitely not the man.

■ If defense counsel in fact was trying to present one of the two school girls to testify that on September 20, she saw a man closely resembling appellant committing a crime which bore such a detailed resemblance to the crime appellant was charged with committing in exactly the same spot six days later, then the trial judge's exclusion of the testimo-

1. This brief is not part of the record on appeal, Pa.R.A.P. 1921, a problem we discuss *infra*, at notes 3 through 7 and accompanying text.

ny as irrelevant was clearly erroneous. The testimony of the offered witness, by showing the other person committed the indecent exposure on September 20, would naturally tend to show that person committed the strikingly similar crime which appellant is accused of committing six days later. It is unquestionably relevant for a defendant to show that the crime of which he is accused was committed by someone else. *Commonwealth v. Boyle*, 470 Pa. 343, 359, 368 A.2d 661, 669 (1977); 1 Wharton's Criminal Evidence § 195 (13th ed. 1972).

While no previous case appears to hold, as we do here, that the defense may introduce evidence that someone else committed a crime which bears a highly detailed similarity to the crime with which the defendant is charged, we agree with appellant that this conclusion follows inexorably from the myriad cases holding that "evidence *is* admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial,—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. A veritable multitude of authorities in our appellate courts enunciate, albeit in varying language, this familiar principle." *Commonwealth v. Wable*, 382 Pa. 80, 84 n. 2, 114 A.2d 334, 337 n. 2 (1955) (emphasis in original; citing 21 cases in footnote).[2] The Commonwealth is permitted in such cases to introduce evidence that the defendant committed crimes other than the one charged, because their highly detailed similarity makes their probative value in showing that the defendant committed the crime charged so great as to outweigh even the

2. The cascade of cases supporting this proposition has continued in the quarter century since *Wable*. Only last year, for example, our Supreme Court so held three times within a single week. *Commonwealth v. Brown*, 489 Pa. 285, 296, 414 A.2d 70, 75–76 (1980); *Commonwealth v. DeVaughn*, 488 Pa. 629, 631, 413 A.2d 660, 661 (1980); *Commonwealth v. Green*, 488 Pa. 611, 616–17, 413 A.2d 651, 654 (1980).

substantial danger of prejudice to the defendant. *See Commonwealth v. Morris*, 493 Pa. 164, 174, 425 A.2d 715, 720 (1981). When the defense offers evidence that someone other than the defendant committed a crime with a detailed similarity to the one charged, the probative value is equally strong in showing that the defendant did not commit the crime charged, and the argument for admissibility is even stronger, because there is no prejudice to weigh against this equally strong probative value.

 The only reason we do not simply reverse and remand for a new trial is that the probative value of the offered witness's testimony depends on the high correlation in detail between the two crimes, something we know about only from the allegations in appellant's brief. This brief is not part of the record on appeal in this court,[3] as defined in Pennsylvania Rule of Appellate Procedure 1921:

> The original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases.

 Of course, it is an absolute rule that on appellate review, a court may not consider facts outside the record.[4] *Commonwealth v. Young*, 456 Pa. 102, 115 n. 15, 317 A.2d 258, 264 n. 15 (1974) (citing numerous cases). Unfortunately, administration of this salutary rule has been somewhat erratic. For example, less than six weeks after *Commonwealth v. Young, supra*, our Supreme Court filed an opinion considering a summary of facts alleged in the appel-

**3.** It is important to note the precise limits on this statement. A brief filed on appeal in this court is not part of the record in this court, just as a brief filed on appeal in the Supreme Court is not part of the record in that Court. However, if an appeal is allowed from the Superior Court to the Supreme Court, the briefs which were filed in the Superior Court are part of the record on appeal in the Supreme Court. The reasons for this apparent anomaly, as well as its consequences, are discussed in note 6, *infra*.

**4.** This proposition is "black letter law." *Commonwealth ex rel. J.J.B. v. R.A.McG.*, 283 Pa.Super. 185, 187, n. 4, 423 A.2d 1050, 1051, n. 4 (1980), *quoting McCaffrey v. Pittsburgh Athletic Association*, 448 Pa. 151, 162, 293 A.2d 51, 57 (1972).

lee's brief, even though there was nothing in the record concerning these facts, because the appellant had "not substantially challenged that summary in any of his filings." *State Dental Council and Examining Board v. Pollock*, 457 Pa. 264, 271, 318 A.2d 910, 914 (1974). Other cases also contain vague and confusing references to apparent departures from the rule on an ad hoc basis.[5] Such standardless deviation from an essential principle of appellate review quickly creates confusion, and eventually chaos.[6] It is thus

**5.** *E.g., Commonwealth v. Jones*, 478 Pa. 172, 176–77 n. 1, 386 A.2d 495, 497 n. 1 (1978) (relying on brief "presented" rather than "filed" in lower court, and thus not part of record); *see Heilig Bros. Company, Inc. v. Kohler*, 366 Pa. 72, 75, 76 A.2d 613, 616 (1950) (accepting factual assertion, at oral argument and in paper book, which was not refuted); *compare Apple Storage Co., Inc. v. Consumers Education and Protective Association*, 441 Pa. 309, 312 n. 1, 272 A.2d 496, 497 n. 1 (1971) (plurality opinion stating that recitation of "facts" [quotation marks in original] in opinion come from allegations in appellants' brief, although in reaching decision, court considered no "facts") *with id.*, 441 Pa. at 316, 272 A.2d at 499 (concurring opinion asserting that "facts" which come only from their brief should not be considered even as background); *see also Young v. Hipple*, 273 Pa. 439, 450, 117 A. 185, 189 (1922) (relying on "attitude of both counsel in both arguments in this court").

**6.** In *Commonwealth v. Jones, supra*, note 5, the Court considered material which was not part of the record, because it had only been allegedly "presented," rather than filed in the lower court, as required by Rule of Appellate Procedure 1921. This practice led to great confusion and controversy in this court concerning what could or should be considered, as well as how to find it if it were to be considered. *E.g., compare Commonwealth v. Roberson*, 258 Pa.Super. 471, 473–76, 393 A.2d 455, 456–57 (1978) (plurality opinion) *with id.*, 258 Pa.Super. at 476–78, 393 A.2d at 458–59 (dissenting opinion).

The purported justification in *Jones* for considering material not in the record was the fact that the Supreme Court considers briefs from the intermediate appellate courts in determining waiver questions. It is true that the Supreme Court must consider the contents of intermediate appellate briefs in order to determine whether an issue was waived by failure to raise it at that level. *E.g., Commonwealth v. Piper*, 458 Pa. 307, 310 n. 5, 328 A.2d 845, 847 n. 5 (1974). This practice, however, is consistent with the rule that material outside the record may not be considered, because intermediate appellate briefs are part of the record in the Supreme Court. Under the definition in Rule 1921, the record includes original papers filed in the "lower court." In pertinent part, the definition of "lower court" is, "The court from which an appeal is taken or to be taken." Pa.R.A.P. 102. (The remaining part of the definition is inapplicable, since it only concerns "matters arising under Chapter 17," while an

with some relief that we note that last year in *Commonwealth v. Quinlan*, 488 Pa. 255, 258, 412 A.2d 494, 496 (1980), our Supreme Court unanimously [7] condemned consideration by an appellate court of material outside the record.

■ Since allegations in a brief, even when not "substantially challenged," are not part of the record, *Quinlan* necessarily overrules *State Dental Council and Examining Board v. Pollock, supra,* to the extent that it allows consideration of such allegations. We shall therefore not base our disposition on the unchallenged assertions in appellant's brief, but rather on what is in the record. All that appears on the record concerning the offered testimony is the following:

(At side bar.)

THE COURT: [Defense counsel] wants to offer a witness, a student at the school, who says that Mr. Rini was arrested on some other day, September 20, on a similar charge; and there was a photo identification line-up; and while Mr. Rini looked like the man, he was determined not to be the man; and the charge was dismissed. Is that correct so far?

[DEFENSE COUNSEL]: That is correct so far.

THE COURT: And so, apparently the offer is to show that the girls would be mistaken in their identification which is the issue here, no question about that; but that is not probative at all. He also says that, well, if he had a

appeal by allowance arises under Chapter 11, specifically under Rule 1112). Thus, in an appeal by allowance from the intermediate appellate court, that court is the lower court, and briefs filed in that court are by definition part of the record in the Supreme Court. (Of course, everything which constituted the record on appeal in the intermediate appellate court is also part of the Supreme Court record, because that material was filed in the intermediate appellate court by the trial court prothonotary.) If under the practice mentioned in *Commonwealth v. Jones, supra,* the Supreme Court requests briefs from the intermediate appellate court, the Supreme Court is merely obtaining what should have been there in the first place, in accordance with the procedure set forth in Rule 1926. See note 8, *infra.*

7. The only member of the Court not joining *Quinlan* was Justice Roberts, whose dissenting opinion explicitly agreed with the majority on this point. 488 Pa. at 261, 412 A.2d at 498.

record, that conviction—you cannot introduce an arrest. You understand that you are not saying that. That is what the law is.

[DEFENSE COUNSEL]: I can show sufficient cases where it is part of the common scheme or design—

THE COURT: Where he says—where an arrest is a common scheme, the Commonwealth would have a right to introduce that evidence. Without arguing the legal merits. The Commonwealth is not trying to introduce that arrest or any other prior conviction at all. I find this offer to be totally irrelevant to the issue here and not competent; and the offer is denied.

(End of side bar conference.)

What we glean from this somewhat confusing conversation is that the trial judge purported to state on the record the facts relevant to determining whether the witness's testimony was relevant. Apparently because of a misunderstanding of defense counsel's argument, the judge stated only that the September 20 crime was a "similar charge," without going into whether there was a sufficient correlation of details to make evidence that someone else had committed the September 20 crime relevant to the question of whether appellant had committed the September 26 crime. That the details did not get on the record was not the fault of defense counsel, who was clearly trying to raise the argument that there were sufficient details to show a common scheme, when he was cut off by the trial judge's denial of the offer.

We regard this as an appropriate situation to vacate the judgment of sentence and remand under Pennsylvania Rule of Appellate Procedure 1926,[8] so that the specific details of

8. "If any difference arises as to whether the record truly discloses what occurred in the lower court, the difference shall be submitted to and settled by that court after notice to the parties and opportunity for objection, and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the lower court either before or after the record is transmitted to the appellate court, or the appellate court, on proper suggestion or of its

the offered witness's testimony may be placed on the record by defense counsel. If the court below determines the evidence was admissible, a new trial shall be granted; otherwise, judgment of sentence shall be reinstated. Either party, if aggrieved, may appeal that determination.

Judgment of sentence vacated, and case remanded for further proceedings consistent with this opinion.

own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the appellate court." Pa.R.A.P. 1926.