J-S59033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RANDALL MAURICE BOWMAN :
:
Appellant : No. 3793 EDA 2015

Appeal from the Judgment of Sentence November 18, 2015
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002594-2015

BEFORE:  BENDER, P.J.E., OTT, and FITZGERALD,* JJ.

MEMORANDUM BY FITZGERALD, J.:            **FILED OCTOBER 12, 2017**

Appellant, Randall Maurice Bowman, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial conviction of simple assault.[1]  Appellant alleges the trial court erred in precluding defense counsel from cross-examining the victim to impeach her credibility.  We affirm.

We adopt the facts and procedural history set forth by the trial court's opinion.  **See** Trial Ct. Op., 1/5/17, at 1-6.[2]  Appellant raises the following

_____

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2701(a)(1).

[2] We note that Appellant timely filed his notice of appeal on December 18, 2015, rather than on December 29, 2015, as stated in the trial court's
*(Footnote Continued Next Page)*

issue for our review: "Whether the court erred when it refused to allow defense counsel to cross-examine the victim on certain statements she made to [Appellant's] mother regarding [the victim's] intention to see that [Appellant] was put in jail, since such testimony had direct bearing on the victim's credibility." Appellant's Brief at 7 (capitalization omitted).

Appellant argues that the jury weighed the credibility of the victim's testimony more favorably than that of Appellant's alibi witness due to the trial court's failure to allow impeachment evidence during defense counsel's cross-examination of the victim. Appellant contends the cross-examination would have revealed the victim's prior statements to Appellant's mother that indicated the victim had a motive to falsely accuse Appellant of assault so he would go to jail. Appellant maintains the court abused its discretion in denying him the opportunity to question the victim about these prior statements. Appellant concludes he is entitled to a new trial. No relief is due.

This Court has held,

> the scope and limits of cross-examination are within the discretion of the trial court and its rulings will not be reversed absent a clear abuse of that discretion or an error of law. Nevertheless, a witness may be cross-examined as to any matter tending to show interest or bias.

*(Footnote Continued)* ———————————

opinion. **See** Trial Ct. Op. at 6. Thereafter, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant timely complied.

*Commonwealth v. Mullins*, 665 A.2d 1275, 1277 (Pa. Super. 1995) (citations omitted). Regarding cross-examination to show interest or bias, this Court has stated:

> Generally, evidence of interest or bias on the part of a witness is admissible and constitutes a proper subject for cross-examination. It is well-settled law that cross-examination directed toward revealing possible bias, interest or motive of a witness in testifying against the defendant is always relevant as discrediting the witness and affecting the weight of his testimony.

*Commonwealth v. Gentile*, 640 A.2d 1309, 1313 (Pa. Super. 1994) (citations and quotation marks omitted).

If the hearing judge errs in disallowing certain cross-examination, such an error is subject to a harmless error analysis. *See id.* at 1314. Our Supreme Court has stated, "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Story*, 383 A.2d 155, 162 (Pa. 1978) (footnote omitted). To determine whether an error is harmless, "[t]he uncontradicted evidence of guilt must be so overwhelming, and the prejudicial effect of the improperly admitted evidence [must be] so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Id.* at 168. Thus, an error is harmless if "the appellate court determines that the error could not have contributed to the verdict." *Commonwealth v. Rush*, 605 A.2d 792, 794 (Pa. 1992).

Here, the trial court reasoned:

Appellant's claim of error concerns an ostensible desire by the victim in this matter to send [Appellant] to jail to obtain advantage in a custody dispute, the testimonial evidence or statements betraying the victim's motive to see [Appellant] in jail purportedly post-dated the incident in question. However, the testimony at trial belied any chronic custody dispute. Detailed credible evidence led the Jury to conclude that the victim was assaulted by [] Appellant. The finder of fact did not credit the generalized alibi testimony provided by [] Appellant's mother.

Further, the proposition that the proffered testimony suggesting a motive to fabricate to frame [] Appellant to gain custodial advantage does not logically flow from the assertion that the victim said to [] Appellant's mother that she wanted to see [] Appellant in jail at some time after the assault at issue. It is too remote, collateral and irrelevant to the disposition of the question of whether [] Appellant assaulted the victim. Any alleged statement by the victim expressing desire to see [] Appellant go to jail [is] not germane to the issues at trial. This court did not abuse its discretion in excluding such testimony on cross-examination.

\* \* \*

Appellant's contention is that the underlying pre-text is that the victim was motivated to fabricate the assault by a custody dispute of some kind. However, [] Appellant did not develop any testimony or evidence of a running custody dispute thereby raising a question of a motive to fabricate. The testimony as a whole suggests that custody was fairly informal and the parties co-parented by an arrangement whereby [] Appellant was permitted to appear at the victim's residence and babysit and have visitation while the victim attended school and worked part-time. There was also evidence the paternal grandmother rendered some daycare and visitation.

\* \* \*

Because [] Appellant failed to articulate any prejudice as the result of this [c]ourt's exclusion of cross-examination related to any post-incident statement(s) to

the effect that the victim wanted to see [Appellant] in jail and further, where this [c]ourt committed no abuse of discretion in excluding the irrelevant cross-examination, [] Appellant's claim of error lacks merit.

Trial Ct. Op. at 10-11, 12-13 (record citations omitted).

Thus, even if the trial court improperly excluded cross-examination of the victim regarding the alleged statements she made to Appellant's mother following the assault, the error was harmless because it did not prejudice Appellant and the evidence of guilt was so overwhelming that any prejudicial effect of the error could not have contributed to the verdict. **_See Commonwealth v. Melvin_**, 103 A.3d 1, 20 (Pa. Super. 2014). Detective Edward Silberstein, one of the detectives who responded to the victim's 911 call, testified that he met with the victim within ten to fifteen minutes after the assault occurred and that she was emotionally upset and had "apparent injuries" that were "consistent with an assault, a punch to the face." N.T., 9/23/15, at 124. The detective observed that the victim "had a laceration, which was bleeding, to her lip. Her lip was swollen and her tooth was loose. And along her gum line there was apparent blood from bleeding." **_Id._** at 125-26. The victim provided the detective with a detailed statement of the assault, and the detective took photographs of the victim's injuries, which were introduced into evidence. **_Id._** at 124, 126. Therefore, combined with the victim's own testimony, the photographic evidence and testimony of the detective corroborated the victim's testimony that the assault occurred and

overwhelmingly established the Commonwealth's case. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

PJE Bender joins the Memorandum.

Judge Ott Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2017

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,  :
             APPELLEE,                NO.  3793 EDA 2015

v.                       :         (No. CP-23-CR-00002594-2015)

RANDALL MAURICE BOWMAN,    :
             APPELLANT.

CAPPELLLI, J.                  DATE:  January 5, 2017

## OPINION

The Defendant, hereinafter, "Appellant", contends the trial court erred in excluding certain cross-examination questioning concerning the victim's purported post-incident statement's to the Appellant's mother to the effect that victim intended to make sure the Appellant was put in jail.

Appellant's claim of error lacks merit. The defendant's Judgment of Sentence should be affirmed.

## I. Factual and Procedural Background

On Wednesday, February 12, 2014 at approximately 7:25 PM the Upper Darby police department responded to a 911 call in the area of Brief Ave and West Chester Pike for a domestic assault.(N.T. 9/23/2015, pages 88-91).

1

Upon arrival Officer James Lutz of the Upper Darby Township Police Department located the victim who reported she was assaulted by the father of her child, that is, Appellant, Randall Bowman, inside her vehicle. The victim had visible injuries to her lip and complained of a loose front tooth. (N.T. 9/23/2015, page 97).

At Upper Darby Township Police Headquarters, Detective Edward Silverstein obtained a signed written statement from the victim in reference the assault. (N.T. 9/23/2015, page 97).

The victim reported the Appellant punched her in the face and began choking her for about 2 minutes as they argued inside her car. Appellant yelling at the victim to "shut the fuck up bitch". The Appellant then broke off the attack and jumped out of the car and fled towards the 69th St. transportation terminal located in Upper Darby Township.(N.T. 9/23/2015, pages 91-95). Digital photographs of the victim's injuries from the assault were obtained at that time.(N.T. 9/23/2015, pages 104-5).

Thereafter on February 14, 2014 the Appellant was charged with violations of the crimes code including: 18 §2701 §§(A) (1), simple assault, a misdemeanor of the 2nd degree, 18 §2706 §§(A) (1), terroristic threats with intent to terrorize another, a misdemeanor of the first degree, and 18 §2709 §§(A) (1) harassment, a summary offense.

2

The Jury Trial in this matter proceeded on September 23, 2015 at which time the Commonwealth presented the testimony of the victim and the investigating Detective together with the victim's statement and the Detective's photographs of the victim's injuries. (N.T. 9/23/15).

The portion of the record to which the Appellant takes issue is located at N.T. 9/23/2015 at pages 116 – 118, wherein the following exchange occurred on the record:

By Mr. Sprague:

Q       so you did have interactions with Randall's mother, correct ?

By Sabrina Crews:

A       yes.

Q       you're relatively close to her?

A       yes.

*** 

Ms. Smith(ADA):

Your Honor, I'm going to object, relevance.

The Court:

sustained for last comment.

Mr. Sprague:

pardon?

The Court:

For the last comment.

By Mr. Sprague:

3

Q      At any time did you tell Randall's mother that you were
       going to see that he went to jail?


Ms. Smith:
       Objection, relevance.

The Court:
       Sustained.

Mr. Sprague:
       May I — —

The Court:
       Sidebar?

Mr. Sprague:

       Yes, Your Honor.

                              ***

(Sidebar discussion)

The Court:
       Go ahead.

Mr. Sprague:
       [inaudible] the Commonwealth brought into
       direct and also the statement that
       they are involved in a relationship [inaudible].

Ms. Smith:
       [inaudible] beyond the scope of direct. I never once mention mother.
       And it's hearsay.

The Court:
       well, it's not hearsay from [inaudible] and how's — —
       I mean what's the  point? How does that — — how is that
       a defense

Mr. Sprague:
       [inaudible].

4

The Court:
what's your — — where you going with it? What are you trying to accomplish?

Mr. Sprague:
[inaudible] — —

the court:
um-hum.

Mr. Sprague:
— — [inaudible] testified that there were interactions after this incident. And that essentially this is a custody dispute and [inaudible] and that's what it's motivated — —

Ms. Smith:
this is the whole thing I was saying in the back, you know. She is here as an alibi witness, not to talk about the relationship and, you know [inaudible].

Sprague:
[inaudible].

Ms. Smith:
I'm objecting to hearsay. I'm just letting him know now. So — —

The Court:
Thank you. [Inaudible] how this relates to the alibi or [inaudible].

(Sidebar discussion concluded)
***

The Court:
Back on the record. The objection sustained. Move on with questioning, please.

After the Jury Trial concluded, the Appellant was convicted of simple assault, a misdemeanor of the 2nd degree and sentenced on November 18, 2015 to no less than 12 months to no more than 24 months incarceration and ordered to complete anger management classes prior to any release and not to have contact

5

with his victim. The defendant was not RRRI eligible and was otherwise to comply with the rules and regulations governing probation and/or parole.

On December 29, 2015 the Defendant filed a timely Notice of Appeal to the Pennsylvania Superior Court.

## II.    ISSUE

In his concise statement of errors complained of on appeal, Appellant raises the following:

I.    The court erred when it refused to allow defense counsel to cross-examine the victim on certain statements she made to the defendant's mother regarding her intention to see that he was put in jail since such testimony had direct bearing on the victim's credibility. (See N.T. 9/23/2015 at pages 116 – 118).

## III.    ANALYSIS

Besides the unsupported assertion that this Court committed an abuse of discretion tantamount to reversible error in excluding certain cross-examination surrounding the victim's purported intention to see that the defendant was put in jail, the Appellant does not develop his claim of error beyond arguing that the cross-examination was improperly excluded because "such testimony had a direct bearing on the victim's credibility".

This court properly excluded the wholly undeveloped and collateral line of cross-examination by defense counsel into whether the victim of the alleged assault

6

made post-incident statements to the Appellant's mother to the effect she intended to see that the defendant was put in jail. This court expressly notes the proffered testimony has marginal, if any, relevance and probity.

Appellant made no effort to create any connection, factual predicate or offer of proof of how such a post-incident statement(s) had any bearing on the likelihood of whether or not the criminal conduct and assault actually took place and that the Appellant was the perpetrator. That is, Appellant does not aver how the excluded evidence would have disproven the Commonwealth's claims or proven the Appellant's *alibi* defense which the trier of fact plainly rejected here.

There was evidence offered by the Commonwealth at trial for the finder of fact to conclude Appellant assaulted the victim as charged. Further, the Jury heard the *alibi* testimony and clearly was not persuaded.

The Jury credited the Commonwealth's evidence and found the Defendant guilty beyond a reasonable doubt of simple assault. Even assuming testimony elicited an admission that sometime after being assaulted, the victim said to the Appellant's mother that she wanted to see Appellant go to jail, that testimony does not undermine the victim's credibility. That testimony makes no fact of consequence relevant to the assault and the identity of the perpetrator more or less likely. In fact, seeing that the Appellant goes to jail deals with punishment after conviction over which the victim has no control. The Court controls any sentence.

Also, one could reasonably infer that the victim of an assault who was also choked and sustained a lacerated lip and loosened tooth would honestly want to see her assailant punished with incarceration.

The sidebar argument by defense counsel in support of the excluded line of questioning clearly shows he intended to somehow substantiate an argument that the victim's allegations were driven by "a custody dispute and ... [inaudible] and that's what it's motivated—". (N.T. 9/23/2015, page 118).

The mere unsupported assertion that the excluded testimony has a direct bearing on the victim's credibility is neither persuasive of an abuse of discretion nor of the commission of prejudicial error by this court.

Appellant's claim concerns the trial court's exclusion of certain evidence. The decision to admit or to exclude evidence lies within the sound discretion of the trial court. The standard of review is very narrow; the Pennsylvania Superior Court will only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Commonwealth v. Robertson*, 874 A.2d 200, 1209 (Pa. Super. 2005).

Furthermore, "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." *Pa.R.E. 402.* Evidence is relevant if "(a) it has any tendency to make a fact more or less

8

probable than it would be without the evidence;" and "(b) the fact is of consequence in determining the action." *Pa.R.E. 401*. The comment to *Rule 401* also directs that: "Whether evidence has a tendency to make a given fact more or less probable is to be determined by the court in the light of reason, experience, scientific principles and the other testimony offered in the case." *Pa.R.E. 401*. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Pa.R.E. 403*.

"[a]n accused has a fundamental right to present evidence so long as the evidence is relevant and not excluded by an established evidentiary rule." *Commonwealth v. Ward*, 509, 605 A.2d 796, 797 (Pa. 1992) (citing *Chambers v. Mississippi*, 410 U.S. 284 (1973)). In determining the admissibility of evidence, the trial court must decide whether the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect. *Commonwealth v. Crews*, 536 Pa. 508, 640 A.2d 395 (1994); *see, e.g., Commonwealth v. Dollman*, 518 Pa. 86, 541 A.2d 319 (1988). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. Spiewak*, 533 Pa. 1, 8, 617 A.2d 696, 699 (1992). Evidence that

9

merely *advances an inference* of a material fact may be admissible, even where the inference to be drawn stems only from human experience. *See, e.g., Dollman* (jury could have interpreted disposal of victim's body as evidencing consciousness of guilt); See also, *Crews,* 536 Pa.at 523, 640 A.2d at 402.*Commonwealth v. Hawk,* 709 A.2d 373, 376 (Pa. 1998). "The admissibility of evidence is a matter committed to the sound discretion of the trial court; an appellate court may reverse a trial court's ruling only upon a showing that the trial court abused its discretion." *Id.*

Appellant's claim of error concerns an ostensible desire by the victim in this matter to send the defendant to jail to obtain advantage in a custody dispute, the testimonial evidence or statements betraying the victim's motive to see the defendant in jail purportedly *post-dated* the incident in question. However, the testimony at trial belied any chronic custody dispute. Detailed credible evidence led the Jury to conclude that the victim was assaulted by the Appellant. The finder of fact did not credit the generalized *alibi* testimony provided by the Appellant's mother. (See, N.T. 9/23/2015, page 120, there was no pending custody acion/order).

Further, the proposition that the proffered testimony suggesting a motive to fabricate to frame the Appellant to gain custodial advantage does not logically flow from the assertion that the victim said to the Appellant's mother that she wanted to

10

see the Appellant in jail at some time after the assault at issue. It is too remote, collateral and irrelevant to the disposition of the question of whether the Appellant assaulted the victim. Any alleged statement by the victim expressing desire to see the Appellant go to jail are not germane to the issues at trial. This court did not abuse its discretion in excluding such testimony on cross-examination.

Although the Appellant didn't develop the argument at trial, presumably evidence of the victim's motive to fabricate would supposedly materially discredit the victim's assault story. Appellant contends he had a viable alibi in the form of his mother's testimony that he was at her residence at the pertinent time on the evening the incident occurred.

Appellant's argument lacks merit because the fact finder determined from the testimony elicited at trial that the assault occurred as a rapid escalation of a verbal argument that turned into a domestic assault quickly. The victim testified that the verbal argument arose out of the defendant's unwillingness to retrieve a meal for the victim from a crowded GIANT Food Store on the evening of the incident in question. In turn, the victim who had driven the Appellant to the GIANT Food Store then headed for the transportation terminal at 69th Street. Along the way the victim testified that the Appellant's remarks became increasingly vulgar which prompted the victim to pull-over and ask the Appellant to step out of her car.

11

The finder of fact could and did conclude that a verbal argument then turned physical after the Appellant exited the victim's car only to re-enter and punch the victim in the face and choke her when she called him a "deadbeat". The assault lacerated her lip and loosened her tooth.

Appellant's contention is that the underlying pre-text is that the victim was motivated to fabricate the assault by a custody dispute of some kind. However, the Appellant did not develop any testimony or evidence of a running custody dispute thereby raising a question of a motive to fabricate. The testimony as a whole suggests that custody was fairly informal and the parties co-parented by an arrangement whereby the Appellant was permitted to appear at the victim's residence and babysit and have visitation while the victim attended school and worked part-time.(N.T. 9/23/2015, pages 89, 111). There was also evidence the paternal grandmother rendered some daycare and visitation. (N.T. 9/23/2015, pages 114, 120).

Appellant's issue concerning the trial court's ruling on cross-examination is subject to the following standard of review:

> "The scope of cross-examination is within the sound
> discretion of the trial court, and we will not reverse
> the trial court's exercise of discretion in absence of
> an abuse of that discretion. Generally, every
> circumstance relating to the direct testimony of an
> adverse witness or relating to anything within his or
> her knowledge is a proper subject for cross-
> examination, including any matter which might

12

qualify or diminish the impact of direct examination." *Jacobs v. Chatwani*, 922 A.2d 950, 965 (Pa.Super. 2007).

Because the Appellant failed to articulate any prejudice as the result of this Court's exclusion of cross-examination related to any post-incident statement(s) to the effect that the victim wanted to see the defendant in jail and further, where this Court committed no abuse of discretion in excluding the irrelevant cross-examination, the Appellant's claim of error lacks merit.

## IV. CONCLUSION

For all the foregoing reasons, this Court's decision should be **AFFIRMED**.

BY THE COURT:

Richard M. Cappelli, Judge

2017 JAN -5 PM 3:30
OFFICE OF JUDICIAL SUPPORT DELAWARE CO. PA
FILED

13